*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————— :
                                               :
APRYL BOYLE                                    :
                                               :
                    Plaintiff,                 :
                                               :        Case No. 12-4724 (FLW)
            v.                                 :
                                               :            **OPINION**
CAROLYN W. COLVIN[1]                           :
                                               :
                    Defendant.                 :
———————————————————— :

**WOLFSON, United States District Judge:**

Plaintiff Apryl Boyle ("Plaintiff"), appeals from the final decision of the Commissioner of

Social Security ("Commissioner"), denying Plaintiff disability benefits under the Social Security

Act (the "Act"). Plaintiff contends that the record substantiates her claims that she is disabled, and

requires a conclusion that she is entitled to disability insurance benefits. After reviewing the

administrative record, this Court finds that the ALJ's decision is not supported by substantial

evidence of the record, and accordingly, reverses the ALJ's decision to deny Plaintiff disability

benefits and remands for further proceedings not inconsistent with this Opinion.

## I.    OVERVIEW

### A.    Procedural History

Plaintiff initially filed an application for Social Security Disability Benefits on October 10,

_____

[1]     Plaintiff filed suit against Michael J. Astrue, the previous Commissioner of Social Security, who has since been replaced by Carolyn W. Colvin as the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted as the defendant in this suit. *See also* 42 U.S.C § 405(g).

2008.  AR 11.  In this application, Plaintiff alleged that her disability began on August 1, 2004, due to several psychiatric impairments, including, *inter alia*, depression and anxiety.  AR 11, 13.  Plaintiff's claims were first denied on May 18, 2009.  AR 11.  On August 19, 2010, Plaintiff appeared at a hearing before an administrative law judge (ALJ), along with her husband, Ken Boyle, and was represented by her attorney, Craig Voorhees, Esq.  The ALJ subsequently issued an unfavorable decision on September 2, 2010, denying Plaintiff benefits on the basis that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act during the relevant period.  AR 11-19.  Plaintiff then petitioned the Social Security Appeals Council for review of the ALJ's decision, which denied her request for review on May 22, 2012, making the ALJ's September 2, 2010 decision a final, appealable judgment.  AR 1.  Plaintiff then filed a Complaint in this Court on August 7, 2012, appealing from the ALJ's decision to deny Plaintiff benefits beginning from her August 4, 2004 alleged disability onset date.  *See* Dkt. No. 1.

### B.    Background

Plaintiff, who is married and lives with her husband, was born in April 1977 and is currently 37 years old; she was 32 years old as of her date last insured, September 30, 2009.  AR 14-15, 114, 131.  Plaintiff has a high school education with additional training as a tractor-trailer driver.  AR 32-33, 146-47.  Plaintiff's past relevant work includes, *inter alia*, being a school bus driver, school bus aide, toll collector, and, most recently, truck driver.  AR 18, 56-57, 150-61.  Beginning in high school, Plaintiff has had a history of depression, which grew increasingly severe until in or around April 2001, Plaintiff lost her job.  AR 13.  From April 2001 through September 2005, Plaintiff received intermittent treatment for depression and anxiety at Universal Behavioral Health Care ("UBHC").  AR 13.  In April 2006, Plaintiff began outpatient mental health treatment at Hunterdon Medical Center ("HMC"), which continued through the end of the alleged disability period.  AR

14.  I detail the relevant findings of Plaintiff's treating and evaluating medical professionals below.

### C.    Review of Medical Evidence

Plaintiff received mental health treatment at UBHC from June 30, 2004 through September 28, 2005.  AR 208-13.  In her detailed medical history from UBHC, Plaintiff was noted to have a long history of mental health care beginning when she was sixteen years old.  AR 210.  At UBHC, Plaintiff was diagnosed with dysthymic disorder, attention deficit hyperactivity disorder ("ADHD"), and learning disorder, not otherwise specified. AR 208. Additionally, during her time at this UBHC, Plaintiff was evaluated for Asperger's Syndrome; it is unclear from the record what resulted from this evaluation.  AR 213.  Upon termination of her treatment at UBHC, Plaintiff was assessed a psychological/cognitive condition of "good/no current problems identified" and social-interpersonal/instrumental functioning condition of "good/no current problems identified."  AR 213.   Nevertheless, upon termination, Plaintiff's prognosis was reported as "fair" and the associated comments indicated: "Needs to follow up with Psych team to address issues." AR 213.

Plaintiff was subsequently treated at HMC from April 25, 2006, through March 19, 2008 AR 232-46. As with UBHC, upon initial presentation, Plaintiff complained of lifelong depression, poor sleep, poor concentration, and poor memory, as well as the belief that she had Asperger's/autism.  AR 232.  Upon mental status examination, she was noted to have pressured speech, depressed mood, and constricted affect, as it was further noted that she was "tearful at times especially about feeling that she doesn't belong anywhere."  AR 234.  At the same time, she was also noted to have intact thought processes, no suicidal or homicidal ideation, as well as fair judgment but impaired concentration.  AR 234.  Notes from a functional assessment indicate that, with respect to coping mechanisms, Plaintiff "relies on her step-grandson's and husband's needs to give her structure although she is struggling to keep up." AR 234.  Plaintiff was further described

3

as having poor activities of daily living, social, and recreation skills.  AR 234.  At this time, Plaintiff was diagnosed with depressive disorder, not otherwise specified, and given a global assessment of functioning score ("GAF") of 45, with the notation that her previous GAF was 60.[2] AR 235.  Plaintiff's prognosis upon intake at HMC was noted as "guarded," and two to three weeks of treatment at HMC was initially recommended.  AR 235. During treatment, Plaintiff exhibited clinical findings such as anxious and depressed mood, loud/pressured speech, impaired memory, and fair/poor coping mechanisms, as well as fair judgment and insight during mental status examination; her GAF ranged between 45 and 50 during the relevant time period.  AR 234-42, 281.  An HMC behavioral health assessment completed on September 11, 2009, revealed the following: "slight progress" in Plaintiff's present illness; Plaintiff "socializes with bro[ther] and husb[and]'s postal friends"; Plaintiff's appearance was well-groomed, attitude was cooperative, speech was normal, mood was depressed and anxious, affect was appropriate, thought process was intact, concentration was impaired, general knowledge was intact, judgment and insight were poor. AR 279-282.  At this time, Plaintiff was again diagnosed with depressive disorder, social phobia, and Asperger's, and assigned a GAF of 49.  AR 282.

At the Commissioner's request, Plaintiff was examined by Anju Rustagi, M.D., on December 24, 2008.  AR 255-57.  After a detailed mental status examination, which included clinical findings of depressed affect with self-reported suicidal thoughts, inability to complete serial 7's, and an inability to interpret abstractions, Plaintiff was diagnosed with major depression, with a ruling out of mood disorder due to medical condition, and given a GAF of 55-60.  AR 256-

---

[2]   A GAF score is a psychiatric metric, and a score between 41 and 50 indicates serious symptoms or serious difficulty in social, occupational, or school functioning, with lower scores indicating greater impairment.  *See, e.g.*, American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).

57.

On January 13, 2009, a state medical consultant psychologist, Dr. Ina Weitzman, reviewed Plaintiff's medical records and noted that "Plaintiff has a long history of being in and out of psych treatment with a variety of providers and a variety of diagnoses," which include ADHD, dysthymic disorder, and mood disorder, with fair prognosis. AR 274. Dr. Weitzman diagnosed Plaintiff with major depression, and concluded that Plaintiff "is able to do simple, routine work in a low contact setting. AR 274. These findings were reaffirmed on April 13, 2009, by state agency psychologist Dr. Amy Brams. AR 276.

On July 15, 2010, one of Plaintiff's treating psychiatrist, Dr. Padma Palvai, composed a letter detailing Plaintiff's treatment at HMC since April 2009. AR. 277. In this letter, Dr. Palvai stated that Plaintiff had been diagnosed with pervasive developmental disorder, not otherwise specified, social phobia, and major depressive disorder—recurrent, moderate. AR 277. Dr. Palvai also outlined Plaintiff's treatment which included individual psychotherapy as well as medication. AR 277. In connection with these diagnoses, Dr. Palvai opined that Plaintiff has "significant difficulties with her social skills" and "extreme social anxiety," which make her functioning in a job "extremely difficult." AR 277; *see also* AR 277 (opining that Plaintiff's pervasive developmental disorder and social anxiety "make[] it extremely difficult for her to function in any job").

### D.   Testimonial Record

Plaintiff, her husband, and a vocational expert ("VE") testified before the ALJ on August 19, 2010. AR 23-60.

1.   Plaintiff's Testimony

Plaintiff testified that she previously used to work driving tractor-trailers within New

Jersey, but stopped working that job in 2004, when she was terminated for having been involved in too many accidents.  *See* AR 28-31.  Nevertheless, Plaintiff testified that she still holds a commercial drivers' license, and Plaintiff and her husband share driving a pickup truck.  AR 30-31.  With respect to her home life, Plaintiff testified that she and her husband live alone, with their pets, and that her daily activities include using her computer for reading fiction and the news, as well as looking up the weather and playing card games.  AR 31-32.  Plaintiff testified that her current diagnosis varied depending on the treating doctor, but included Asperger's and developmental disorder, not otherwise specified.  AR 33.  Plaintiff explained that her mental health affected her "lifestyle," and causes her difficulty when in a work setting.  AR 33.  In that connection, Plaintiff testified that in her previous jobs she had been the "target for cruel coworkers and supervisors" and that she had problems getting along with coworkers.  AR 34.  Outside of work, Plaintiff described poor interactions with other people, but also stated that the reason she did not have friends was due to "geography."  AR 34.  Plaintiff further testified that she has crying spells and, almost every day, difficulty falling asleep, which causes her to be "more or less in a fog all day."  AR 36.  Plaintiff stated that she has problems maintaining concentration and following instructions, and gets tired easily doing household activities.  AR 37-39.  Plaintiff testified that she is able to generally communicate effectively with others, but sometimes feels like she falls behind in a conversation.  AR 39.  Because of this, Plaintiff testified that she has limited social interaction.  AR 39-40.  Plaintiff stated that her mood fluctuates throughout the day, that she gets frequently agitated, and that she is physically clumsy.  AR 44.

With respect to her mental health treatment, Plaintiff testified that she was first treated for depression in 1993, and was also receiving treatment in 2004, after she had stopped working as a truck driver.  *See* AR 34-35.  Around this time, Plaintiff testified that was taking medication for

6

her depression, but the effects of the medication eventually wore off, leaving her feeling more depressed than usual.  AR 35.  Plaintiff explained that she sees a psychiatrist about every three to four months, and that she previously had been seeing a therapist but stopped because she did not find it "very useful."  AR 41-42.  Plaintiff also testified to having attended a support group for people with Asperger's for a brief period, but not regularly.  AR 45.

In sum, Plaintiff testified that she did not feel capable of working because she has "tried for years" but "just [has not] been successful at anything," *i.e.*, could not keep any one job for a long period of time.  AR 45-46.  Plaintiff further testified that she currently did not feel that she could maintain a routine schedule required for work, primarily because of her "energy levels" and sleep issues.  AR 46.  Plaintiff also testified that her problems with her memory would affect her job performance.  AR 46.

2.      Plaintiff's Husband's Testimony

Plaintiff's husband, Mr. Boyle, also testified at the hearing.  Mr. Boyle testified that he had known Plaintiff since 1999, married in 2004, and had been her supervisor at Plaintiff's former truck-driving job.  AR 47, 51.  Mr. Boyle explained that when he was Plaintiff's supervisor, he found Plaintiff to be overall a decent truck driver, but with some issues maneuvering.  AR 48-49.  Mr. Boyle described Plaintiff's day-to-day activities as "basically reading" and "sleeping," because Plaintiff lacks "motivation."  AR 49.  Mr. Boyle testified that when he conversed with Plaintiff, she would ramble, and she often had difficulty understanding sarcasm or common expressions.  *See* AR 52-53.  Mr. Boyle noted further that "without supervision," Plaintiff lacked concentration and/or could get easily distracted in performing even basic tasks like reading.  AR 53-54.  With respect to Plaintiff's sleeping patterns, Mr. Boyle testified that they were erratic.

3.      VE's Testimony

Lastly, the VE, Lee Levin, also testified at the hearing before the ALJ.  After confirming that he had reviewed the record, Mr. Levin first testified that Plaintiff's past semi-skilled work was as a (i) tractor-trailer driver, (ii) truck driver, (iii) school bus driver, (iv) minivan driver, and past unskilled work was as a (i) toll collector, and (ii) school bus monitor.  AR 56-57.  The ALJ then posed the following hypothetical to the VE:

> [B]egin by assuming . . . an individual of this claimant's age, education, and past work history.  Further assume that the individual is capable of performing a range of work that does not involve detailed instructions but rather is confined to routine one or two step tasks providing no more than limited contact with or proximity to coworkers or public, and it should be a job where there are few work changes.
>
> Could an individual . . . limited in this fashion do any of the jobs that Ms. Boyle has done?

AR 57.  The VE responded that such an individual could not perform any of Plaintiff's previous jobs.  AR 57.  The ALJ next asked the VE if such an individual could perform any other jobs in the national economy, to which the VE responded that an individual could work (i) as a laundry worker, with approximately 1,600 positions regionally and 67,000 positions nationally, (ii) at assembly, with approximately 600 positions regionally and 400,000 positions nationally, and (iii) at hand packing, with approximately 300 positions regionally and 120,000 positions nationally.  AR 57-58.

Following the ALJ's questions, Plaintiff's attorney asked the VE if a hypothetical individual who had the limitations posed by the ALJ and also required unscheduled breaks or absences, or who was unable to keep up with her work, would still be able to perform those jobs, to which the VE responded in the negative.  AR 58-59.

## E.    The ALJ's Findings

In a decision dated September 2, 2010, the ALJ initially determined that Plaintiff met the insured status requirements of the Act from the alleged disability onset date through September

30, 2009. AR 13. After reviewing the record and applying the relevant law, the ALJ determined that Plaintiff was not under a disability within the meaning of the Act during the applicable disability period. AR 19.

In reaching this conclusion, the ALJ applied the standard five-step sequential evaluation process to determine if Plaintiff satisfied her burden of establishing disability.[3] AR 13-19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of August 1, 2004. AR 13.

At step two, the ALJ found that Plaintiff had the following severe impairment during this period of time: organic brain disorder (and possible pervasive developmental disorder or PDD), depression, and anxiety. AR 13.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the SSA that would automatically find Plaintiff disabled. AR 14-15. In so finding, the ALJ noted, *inter alia*, that Plaintiff had moderate difficulties with respect to concentration, persistence, or pace, stemming from her "ADHA [*sic*], a learning disorder, Asperger's or PDD."[4] AR 15.

At step four, the ALJ determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she was unable to perform detailed job instructions and was confined to routine 1-2 step tasks that involved limited contact with and proximity to the public and coworkers and few changes in the work setting." AR 15-16. The ALJ employed a two-step process whereby the ALJ first evaluated whether there was

---

[3]     *See infra* Part II.B.
[4]     The ALJ applied the "paragraph B" and "paragraph C" to Plaintiff's claimed mental impairments. Plaintiff does not dispute the adequacy of the ALJ's analysis and thus I do not discuss it further.

"an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." AR 16. After determining that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ evaluated whether Plaintiff's assertions as to the "intensity, persistence and limiting effects" of her symptoms were credible when compared to the entire record. AR 16. As to that issue, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not credible because they were inconsistent with Plaintiff's medical history and RFC. AR 16.

In that regard, the ALJ first noted that although Plaintiff alleged that she had virtually no social interaction, her self-reported medical records revealed that she socializes with her brother and her husband's friends, has visited a wide variety of different medical providers over the years, and has maintained a long relationship with her husband. AR 17. The ALJ further noted that Plaintiff's claim that she is unmotivated to do anything to be contradicted by her admissions that she reads daily, watches television, prepares dinners from scratch, and feeds, waters, and otherwise cares for household pets. AR 17.

With respect to her mental health care, the ALJ determined that the evidence reflect that Plaintiff has been "in and out" of care over the course of several years, and, notably, that when Plaintiff received regular and consistent medication therapy—which has been the case since September 2009—her mood is stable and less depressed, with an improvement in her sleep. AR 17. The ALJ noted that Plaintiff's husband's testimony supported this finding. AR 17. On the other hand, the ALJ rejected the husband's testimony that Plaintiff required a lot of "supervision" as being unsupported by the longitudinal history. AR 17. The ALJ also noted that, even assuming that Plaintiff had been in fact diagnosed with PDD and Asperger's—which was unclear from the

10

record—the record nevertheless showed that Plaintiff had been able to work independently in a variety of semi-skilled jobs.  AR 17.  The ALJ further rejected, as being unsupported by the record evidence, the opinion of Dr. Palvai, one of Plaintiff's treating psychiatrists, that Plaintiff's limitations made it "extremely" difficult for her to perform any job.  AR 17.  Specifically, the ALJ found that Dr. Palvai's opinion conflicted with (i) Plaintiff's high-level of functioning, including her relative independence and ability to perform day-to-day activities, (ii) Plaintiff's history of holding a variety of jobs for a meaningful amount of time, (iii) medical records evaluating Plaintiff with a high-level of functioning, and (iv) the contrary findings of the state agency consultant.  AR 17.  Indeed, the ALJ gave considerable weight to the state consultant's findings that Plaintiff was capable of performing simple, routine work in a low contact setting.  AR 17.

In light of the RFC assessment and based on the testimony of the VE, the ALJ determined that Plaintiff could not perform any of her past relevant work.  AR 18.  The ALJ next found that Plaintiff was considered a "younger individual" under the applicable regulations.  AR 18.  Relying on the testimony of the VE, the ALJ found that Plaintiff would be able to perform jobs as a laundry worker, at assembly, and at hand packing, and that significant positions existed in these jobs both regionally and nationally.  AR 18-19.  Based on these findings, the ALJ concluded, at step five, that the Plaintiff was "not disabled" under the Act and denied Plaintiff disability insurance benefits.  AR 19.

## II.    DISCUSSION

### A.    Standard of Review

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

### B.    Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability.  *Id.;* § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  *See* 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity."  *Id.* § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits.  *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Id.*  A claimant who does not have a severe impairment is not considered disabled.  *Id.* § 404.1520(c); *see Plummer*, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.  *See id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5.  If the specific impairment is not listed, the ALJ will consider in his or her decision the

13

impairment that most closely satisfies those listed for purposes of deciding whether the impairment

is medically equivalent.  *See* 20 C.F.R. § 404.1526(a).  If there is more than one impairment, the

ALJ then must consider whether the combination of impairments is equal to any listed impairment.

*Id.*  An impairment or combination of impairments is basically equivalent to a listed impairment

if there are medical findings equal in severity to all the criteria for the one most similar.  *Williams*,

970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment

List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the residual functional capacity to perform his or her past relevant work.  20 C.F.R. § 404.1520(e);

*Bowen*, 482 U.S. at 141.  If the claimant is able to perform previous work, the claimant is

determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.

The claimant bears the burden of demonstrating an inability to return to the past relevant work.

*Plummer*, 186 F.3d at 428.

### C.    Plaintiff's Arguments

Plaintiff raises three arguments on appeal regarding the ALJ's decision denying her

disability benefits.  First, Plaintiff argues that the ALJ improperly rejected the opinions of

Plaintiff's treating psychiatrist, Dr. Pavlai.  Second, Plaintiff asserts that the ALJ erred by not

including in his decision a credibility finding with respect to Plaintiff's husband's testimony.

Lastly, Plaintiff contends that the ALJ erred by not including all of Plaintiff's restrictions in the

hypothetical posed to the VE.  *See* Pl. Br., 1.  In response, the Commissioner argues that (i) the

ALJ did not outright reject Dr. Pavlai's opinion, but only—and appropriately—rejected that

portion of the psychiatrist's opinion that was not supported by the objective medical evidence; (ii)

the ALJ's decision considered and rejected Plaintiffs husband's testimony consistent with Third

14

Circuit law; and (iii) the ALJ's hypothetical properly included all of Plaintiff's limitations as required by the Third Circuit.  Overall, the Commissioner argues that the ALJ's decision is based on the substantial evidence in the record, and notes that Plaintiff bore the burden of proving her limitations and that she was disabled, and that the Commissioner only had the burden of production at step five to establish that sufficient jobs existed that Plaintiff could perform.  I address each of these challenges in turn.

    1.    Dr. Pavlai's Opinion

       Plaintiff first contends the ALJ erred because he improperly rejected the opinion of one of Plaintiff's treating physicians, Dr. Pavlai, who should have been given controlling weight. Effectively, Plaintiff is challenging the ALJ's step four RFC determination, arguing that had the ALJ considered Dr. Pavlai's opinion, the RFC would include more restrictive limitations.  Thus, I first set forth the legal standard applicable to an ALJ's RFC determination.

       In making a residual functional capacity determination, the ALJ must consider all evidence before him. *See Plummer v. Apfel*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. *See Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d at 121; *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In *Burnett*, the Third Circuit determined that the ALJ had not met his responsibilities because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination."  220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705.  Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him. *See Van Horn v. Schweiker*,

15

717 F.2d 871, 873 (3d Cir. 1983); *Cotter*, 642 F.2d at 707.  A claimant's allegations of pain and other subjective symptoms are to be considered, *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529), and, if they are consistent with objective medical evidence but the ALJ rejects such allegations, the ALJ must provide an explanation for doing so.  *See Van Horn*, 717 F.2d at 873.

Initially, I note that Plaintiff incorrectly characterizes the ALJ's treatment of Dr. Pavlai's opinion.  The ALJ did not reject Dr. Pavlai's opinion wholesale; rather, the ALJ determined that Dr. Pavlai's opinion with respect to the severity of Plaintiff's functional limitations was not supported by the other objective record evidence, and thus was not credible.  Additionally, the ALJ found that the opinion of the state agency psychologist, Dr. Weitzman, which was confirmed by Dr. Brams, to be in line with the record evidence, *i.e.*, that Plaintiff could perform limited work despite her mental health limitations.  *See* AR 17 (citing AR 274, 276).  Contrary to Plaintiff's assertion, it is wholly within the ALJ's discretion to reject medical evidence, even that of a treating physician, where the evidence is contracted by the record.  *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit . . . .  In choosing to reject the treating physician's assessment, an ALJ . . . may reject a treating physician's opinion outright only on the basis of contradictory medical evidence . . . ." (Internal quotation marks omitted.)); *see also Brown v. Astrue*, 649 F. App'x 193, 197 n.2 (3d Cir. 2011) (noting that the "law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity").  Because the ALJ rejected only a portion of Dr. Pavlai's opinion, and did so because it conflicted with the objective record medical evidence, there is no error.  Accordingly,

this aspect of Plaintiff's appeal is rejected.[5]

2.    Husband's Testimony

Plaintiff next argues that the ALJ erred because his decision did not include an explicit credibility finding regarding Plaintiff's husband's testimony.  In response, the Commissioner contends that the ALJ's decision adequately provided a basis for a reviewing court to determine which portions of the husband's testimony were credited and which were rejected, and for what reason.

As noted, in making a determination on benefits, the ALJ must consider all evidence before her.  *See Plummer v. Apfel*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Here, the ALJ (i) cited the husband's testimony regarding Plaintiff's alleged disability, *see* AR 16, (ii) accepted the husband's testimony that was consistent with objective medical evidence, *see* AR 17, and (iii) rejected the husband's testimony that was contracted by the medical evidence.  *See* AR 17 ("Although [Plaintiff's husband] stated that [Plaintiff] needs a lot of supervision, this is not supported by the longitudinal history . . . .").  I am more than satisfied that the ALJ addressed the husband's testimony and made credibility findings thereon.  Contrary to Plaintiff's suggestion, there is no requirement that the ALJ make an explicit credibility finding—*i.e.*, use the word "credible"—in assessing witness testimony.  All that is necessary is that the ALJ address the evidence and explain why such evidence, in the ALJ's opinion, is or is not credible; that is the case here, and accordingly, there is no error in this aspect of the ALJ's decision.  *See Van Horn v.*

---

[5]    For similar reasons, Plaintiff's contention that the ALJ erred by not adopting Dr. Pavlai's GAF assessment is also meritless.  The ALJ relied on Dr. Weitzman's determination, which was based on the objective record evidence, that Plaintiff had a GAF that did not render Plaintiff automatically disabled.  *See* AR 17.  Moreover, even a low GAF finding is not dispositive of a claimant's disability; rather, it is but one factor to be considered along with the other record evidence.  *See, e.g.*, *Gilroy v. Astrue*, 351 F. App'x 714 (3d Cir. 2009); *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152 (3d Cir. 2009).

*Schweiker*, 717 F.2d at 873-74 (explaining that ALJ simply must explain basis for adopting/rejecting witness testimony).  Thus, I reject this aspect of Plaintiff's appeal.

3.      VE's Hypothetical Question

Plaintiff lastly asserts that the ALJ erred during step five by failing to account for all of Plaintiff's psychiatric impairments in the hypothetical question posed to the VE.  Notably, Plaintiff does not argue that the ALJ failed to adequately convey to the VE the extent of Plaintiff's mental limitations as set forth in the RFC found by the ALJ; rather, Plaintiff contends that the ALJ failed to incorporate a limitation that the ALJ found in step three, *i.e.*, that Plaintiff had a moderate limitation in maintaining concentration, persistence or pace.  *See* AR 15.  In response, the Commissioner contends that the ALJ was only required to include in his hypothetical questioning those limitations that made up the RFC, and not any other findings, and that, in any event, the hypothetical questioning adequately conveyed to the VE Plaintiff's limitation with respect to maintaining concentration, persistence, or pace.

In order for the Court to find that a hypothetical question was based on substantial evidence, the "hypothetical question must reflect *all* of a claimant's impairments that are supported by the record."  *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984).  "'While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'"  *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny*, 745 F.2d at 218); *see also Johnson v. Comm'r*, 529 F.3d 198, 206 (3d Cir. 2008) ("[T]he hypotheticals posed must 'accurately portray' the claimant's impairments and [ ] the expert must be given an opportunity to

evaluate those impairments 'as contained in the record.'" (Quoting *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005))).

Here, the ALJ found that Plaintiff had "moderate difficulties" with concentration, persistence, or pace, which resulted from her ADHD, Asperger's and/or PDD.  AR 15. Nevertheless, the sole hypothetical question posed to the VE by the ALJ contained no limitation with respect to concentration, persistence, or pace.  *See* AR 57.  This is reversible error under controlling Third Circuit law.

In *Ramirez v. Barnhart*, the Third Circuit reversed the decision of the ALJ where the ALJ had found—in connection with step three but not in connection with the claimant's RFC, as is the case here—that the claimant "often" suffered deficiencies in concentration, persistence, or pace, but failed to include that limitation in the hypothetical posed to the vocational expert.  372 F.3d 546, 554 (3d Cir. 2004).  There, like here, the Commissioner argued that the ALJ's limitation of one- to two-step tasks sufficiently incorporated the concentration, persistence, or pace limitation. *Id.*  The *Ramirez* court rejected the Commissioner's position, explaining that "a requirement that a job be limited to one to two step tasks, as was stated in hypothetical relied upon by the ALJ, does not adequately encompass a finding that [the claimant] often has deficiencies in concentration, persistence, or pace." *Id.* (internal quotation marks omitted).  On that basis, the *Ramirez* court concluded that the hypothetical questioning was deficient, and thus the ALJ's decision was not based on substantial evidence.  *Id.* (citing *Burns v. Barnhart*, 312 F.3d at 123 ("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.").

The Commissioner does not dispute that the ALJ did not include in his hypothetical question any explicit limitation in line with his finding that Plaintiff had "moderate difficulties"

with concentration, persistence, or pace. Rather, the Commissioner first argues that *Ramirez*'s holding has been narrowed by the subsequent decision of *McDonald v. Astrue*, 293 F. App'x 941, 946-47 (3d Cir. 2008). I need not address this argument in much detail because regardless of *McDonald*'s holding, that decision is not precedential. *See* Third Circuit Internal Operating Procedure 5.7 (indicating that non-precedential "opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing"); *In re: Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006) (explaining that because the Third Circuit's Internal Operating Procedures do not regard non-precedential opinions as precedent binding upon itself, these non-precedential opinions "are not precedents for the district courts of this circuit").[6] Thus, *Ramirez* remains the controlling law of this circuit, binding on this Court.[7]

The Commissioner's remaining argument is that the ALJ committed no error because the hypothetical questioning adequately conveyed Plaintiff's limitation, even if it did not do so explicitly, and thus the ALJ did not violate *Ramirez*. I am not persuaded. Plaintiff contends that the limitation posed to the VE—that Plaintiff could only perform one- to two-step tasks— adequately conveyed the ALJ's finding that the Plaintiff suffered moderate difficulties with concentration, persistence, or pace. Yet, this is the exact same argument that the *Ramirez* court

---

[6]     Even though non-precedential opinions of the Third Circuit can be relied on as persuasive authority, I do not find *McDonald* to be persuasive given that the facts in *Ramirez* align almost identically with the facts in this case.

[7]     In that connection, the Commissioner argues that the relevant statutes and interpretive rulings do not require an ALJ to include anything other than the RFC limitations in the hypothetical questioning, citing 20 C.F.R.§ 404.1520a(d)(3) (providing that the RFC must be assessed separately, after the ALJ uses the four functional areas to determine whether a claimant's mental impairments are severe or meet a listing), and SSR 96-8p (noting, in connection with the Psychiatric Review Technique Form, that limitations identified in the four broad areas "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3"). This argument is unavailing because the Third Circuit's holding in *Ramirez*, which is binding on this Court, makes clear that in this jurisdiction, all of an ALJ's findings must be conveyed to the vocational expert. *See Ramirez v. Barnhart*, 372 F.3d at 552-54.

rejected. *Ramirez v. Barnhart*, 372 F.3d at 554. Moreover, here, as in *Ramirez*, when the VE was questioned specifically on a limitation based on concentration, persistence, or pace, he responded that an individual with that limitation would *not* be able to perform the jobs he had previously identified. *See* AR 58-59 (Q: "[I]f [Plaintiff] wasn't able to keep up with the volume [of her job], then she might have problems?" A: "Yeah, if you can't get the work done that is expected of you, then you won't be able to have that job." Q: "Maintain a consistency to perform that job?" A: "Yes."); *see also Ramirez v. Barnhart*, 372 F.3d at 554 (concluding that ALJ's failure to include finding of concentration, persistence, or pace limitation reversible error where "the vocational expert testified that each of the jobs suitable for Ramirez (assembler, packer, and inspector) would have daily production quotas and that Ramirez would have to maintain a certain degree of pace to maintain those jobs."). In light of the VE's concession that Plaintiff would not be able to perform the identified jobs if she could not "keep up" with the work, it necessarily cannot be said that the ALJ's one- to two-step limitation adequately conveyed a restriction related to concentration, persistence, or pace.

Accordingly, I reject the Commissioner's argument that the hypothetical questioning adequately conveyed the ALJ's finding that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. Because the ALJ failed to include one of his factual findings in the hypothetical questions posed to the VE, "the ALJ's step five determination was not supported by substantial evidence in the record" and the ALJ's decision must be reversed, and the matter remanded for further consideration. *Ramirez v. Barnhart*, 372 F.3d at 554.

**CONCLUSION**

For the reasons set forth above, the ALJ's decision is REVERSED and this matter is REMANDED for further proceedings not inconsistent with this Opinion.

An appropriate Order shall follow.


Dated:  July 18, 2014                              /s/ Freda L. Wolfson_____
                                                   Freda L. Wolfson, U.S.D.J.